THIRD DIVISION
September 26, 2007

No. 1-06-2863

| | | |
|---|---|---|
| MARC COHEN, UWE STUECKRAD, | ) | Appeal from |
| MARC PERPER, and DENITA SANDERS, | ) | the Circuit Court |
| Individually and on Behalf of | ) | of Cook County. |
| All Others Similarly Situated, | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 99 CH 2561 |
| | ) | (cons. with 99 CH 8984) |
| BLOCKBUSTER ENTERTAINMENT, INC., | ) | |
| Individually and on Behalf of all Entities | ) | |
| Doing Business as Blockbuster or | ) | |
| Blockbuster Video, | ) | Honorable |
| | ) | Paul Biebel, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____JUSTICE THEIS delivered the opinion of the court:

Plaintiffs, Marc Cohen, Uwe Stueckarad, Marc Perper, and Denita Sanders, brought this national consumer class action lawsuit against defendant Blockbuster, Inc. seeking individual and class relief for certain customers who were charged improper and excessive fees. During the pendency of the case, the circuit court denied Blockbuster's motion to decertify the nationwide class, holding that Blockbuster was judicially estopped from challenging class certification where it had agreed to certification for settlement purposes with respect to another class involving similar litigation in Texas. Thereafter, the circuit court certified the following question for

1-06-2863

interlocutory appeal pursuant to Supreme Court Rule 308:

> "Whether the circuit court abused its discretion when it imposed the
> equitable doctrine of judicial estoppel to bar Blockbuster from
> challenging certification of a national litigation class in Illinois
> where in **thirteen** separate instances Blockbuster both explicitly
> and implicitly agreed for settlement purposes that another class
> virtually identical to the one currently before it met all the
> requirements of a class action in Texas and achieved a settlement
> that bound the rights of 38.5 million to 40 million people."
>
> (Emphasis in original)

For the following reasons, we answer the certified question in the affirmative.

BACKGROUND

In February 1999, plaintiffs filed their original complaint against Blockbuster related to its extended viewing fees (EVFs), which were fees incurred when a customer elected to keep a rented video or DVD beyond the prepaid initial viewing period, and its unreturned video charges, which were imposed when a video or DVD was not returned or was damaged beyond repair (the Cohen case). Plaintiffs alleged that these fees constituted illegal penalties which arose from improper liquidated damages assessed against a customer for his breach of contract. It is undisputed that the breach of contract claims asserted therein were predicated solely upon the written Blockbuster membership agreements, which were form contracts. Plaintiffs asserted that these contracts were continually the same from 1996 until February 2000, and the terms and

2

1-06-2863

conditions of membership were not subject to negotiation between Blockbuster and its customers.

During the course of the <u>Cohen</u> litigation, several other similar state class-action lawsuits were pending against Blockbuster. On April 11, 2001, a Texas trial court entered an order preliminarily certifying a nationwide class for settlement purposes and preliminarily approving a settlement agreement in the case of Scott v. Blockbuster, No. D 162-535 (Jefferson County, Texas) (<u>Scott</u>). The court found that the prerequisites for class certification had been satisfied for settlement purposes only, and indicated that the certification of a settlement class was subject to further review. The Texas court additionally enjoined all other similar class actions pending against Blockbuster from proceeding until the <u>Scott</u> class action issues were finalized.

At the same time, the trial court in the <u>Cohen</u> case entered a counter-injunction and enjoined the Texas court form interfering with its oversight of the <u>Cohen</u> case. On April 23, 2001, the trial court in the <u>Cohen</u> case entered a provisional class certification order certifying two plaintiff classes - a "late fee" class and an "unreturned video" class.

Thereafter, on December 10 and 11, 2001, the Texas court held a fairness hearing in the <u>Scott</u> case for approval of class certification and settlement. At that hearing, plaintiffs' counsel in <u>Scott</u> urged that the requirements for certification were met. For example, they indicated that "[t]he terms and conditions of Blockbuster memberships are found only in the membership applications and nowhere else." Defense counsel for Blockbuster agreed for purposes of settlement that the elements were met. Nevertheless, counsel for Blockbuster made the following reservation with respect to the approval of the settlement class in <u>Scott</u>:

"Your honor, one thing to make clear. [Plaintiff's counsel] has

3

continually advised the Court that that [sic] is a request to certify a settlement only class. Blockbuster is in agreement with the plaintiffs on that point. Nothing in that grievant [sic], however, constitutes a waiver of any objections we might have to any litigation class over these issues in this Court or any other court and the settlement agreement, I believe, incorporates this reservation and I just wanted to make that noted for the record."

On January 22, 2002, the Texas trial court entered its findings of fact and conclusions of law and also entered its final judgment approving the settlement agreement and determining that the settlement in Scott was fair, adequate, reasonable and in the best interests of the members of the settlement class.

The Scott settlement class included "all members of Blockbuster who incurred extended viewing fees or non-return fees between January 1, 1992 and April 1, 2001." The settlement further provided that all members of the Scott settlement class were barred from asserting any further claims against Blockbuster based on its EVF policies, even those incurred after April 1, 2001. The Texas court also identified those individuals whose claims would not be released by the settlement as follows: Blockbuster customers who were not included in the settlement class, including customers who opted out of the Scott settlement class, customers who joined Blockbuster after April 1, 2001, and customers who joined before April 1, 2001, but did not incur any EVFs before that date. Additionally, the settlement agreement provided in part as follows:

"Plaintiffs and Class Counsel agree that certification of the

4

Settlement Class is for settlement purposes only, and further agree

that the certification of the Settlement Class shall not be used to

urge that a litigation class should be certified against Blockbuster in

the event that this settlement is not finally approved for any reason.

In the event this settlement is not approved, Blockbuster retains the

right to object to the maintenance of this or any other action as a

class action and to contest this or any other action on any other

grounds."

The Scott case was considered by the Texas appellate court on several occasions. In Peters v. Blockbuster, Inc., 65 S.W.3d 295 (Tex. App. 2001), the Texas appellate court determined that the trial court did not abuse its discretion in certifying a settlement class, and later affirmed the settlement as fair in part and remanded it in part to address certain class members (not relevant to these proceedings) who were not given adequate consideration. See Johnson v. Scott, 113 S.W.3d 366 (Tex. App. 2003). The Texas Supreme Court ultimately denied a petition for leave to appeal.

Since the Scott settlement had subsumed many of the claims made by the Cohen class members who had been provisionally certified by the Illinois trial court previously, plaintiffs' in the Cohen case filed a first amended consolidated complaint to plead around the Scott settlement. Thereafter, on April 22, 2002, plaintiffs filed a second amended consolidated complaint to rectify additional pleading-related concerns raised by the trial court and to avoid claims of *res judicata*. Therein, plaintiffs proffered new allegations related to their unlawful penalties claim. With respect

to post-April 2001 claims, they alleged that each class member formed an individual oral contract at the time of each rental transaction, that plaintiffs each breached their rental contracts by returning the videos after the due date, and that the resulting fees constituted an unlawful penalty. Under the heading "Background Facts Relating to the Classes," the allegations provided in pertinent part as follows:

> "Although the Membership Application contains a few general 'TERMS AND CONDITIONS', such as that the member shall pay a late fee/EVF if a video is returned late, the Membership Application does not constitute the rental contract. * * * Rather, the only express rental contract is the oral contract between the member and Blockbuster which is formed at the time the member rents a video. That oral contract alone specifies the rental contract's price term and its duration term, and it also has the general 'TERMS AND CONDITIONS' imposed upon it by the Membership Application."

Under the heading "Factual Allegations Relating to Class Representatives," the second amended consolidated complaint further provided in pertinent part as follows:

> "In particular, the doctrine of *res judicata* does not apply here because the Cohen class post-April 1, 2001 penalty claims are not the same claims as the Scott class' claims. The Cohen class' post-April 1, 2001 claims were not presented, and could not have been

presented [sic] in Scott because those claims: (1) are outside the scope of the Scott class definition; (2) are based on separate transactions that had not yet occurred and penalties that had not yet been imposed when the Scott settlement was reached; and (3) are based on a different nucleus of operative fact – different contracts."

Additionally, on October 4, 2004, plaintiffs filed a motion to redefine the class to exclude claims already settled by the Scott case. Notably, the Cohen class representatives had opted out of the Scott settlement. In ruling on the motion to redefine, the trial court specifically considered three factors: (1) the final terms of the Scott settlement; (2) the absence of future claims because of Blockbuster's change to its late-fee policy in 2005; and (3) the existence of a class of persons who signed a membership agreement which included a mandatory arbitration clause. Based upon these factors, the trial court redefined the two Cohen classes as follows:

The "late fee" class:

"All United States residents who rented videos, games, digital video discs or equipment ('Videos') from any entity doing business as Blockbuster Video, and who incurred late fees (i.e.: so called 'Extended Viewing Fees') between February 18, 1994 and December 31, 2004 based on a Blockbuster membership agreement which does not contain an arbitration clause, and who are not bound by the settlement in Scott v. Blockbuster (the 'Scott' class)."

The "Unreturned Video" class:

7

1-06-2863

> "All United States residents who rented videos, games, digital video discs or equipment ('Videos') from any entity doing business as Blockbuster Video, and who were forced to purchase an unreturned video between February 18, 1994 and December 31, 2004 based on a Blockbuster membership agreement which does not contain an arbitration clause, and who are not bound by the settlement in Scott v. Blockbuster (the 'Scott' class)."

On August 15, 2005, the trial court denied Blockbuster's motion to reconsider class membership and definition. Three days later, the supreme court issued its opinion in Avery v. State Farm Mutual Automobile Insurance Co., 216 Ill. 2d 100, 835 N.E.2d 801 (2005), reversing a class action award of over $1 billion because the commonality and predominance requirements of class certification could not be met under State Farm policies that were materially different. Avery, 216 Ill. 2d at 134-35, 835 N.E.2d at 824.

In response to Avery, Blockbuster filed a motion to decertify the national Cohen class. Therein, it argued that the class no longer met the statutory requirements for certification under section 2-801 of the Code of Civil Procedure (the Code) (735 ILCS 5/2-801 (West 2004)). Specifically, they maintained that the contract-based claims at issue in this case did not present predominantly common issues of fact and law due to plaintiffs' new allegations that class members with post-April 2001 claims entered into individual oral contracts with each rental. As a result, adequate and fair class representation was impossible and class certification was improper. Plaintiffs opposed the motion and asserted that Blockbuster was judicially estopped from

8

challenging the certification of the <u>Cohen</u> class due to Blockbuster's position in the certification of the <u>Scott</u> settlement class. The trial court agreed, holding that Blockbuster was judicially estopped from arguing that the class certification requirements for the <u>Cohen</u> class were no longer satisfied.

Thereafter, Blockbuster filed a motion for an interlocutory appeal under Supreme Court Rule 308. 155 Ill. 2d R. 308. The trial court granted the motion in part and certified a single question for interlocutory appeal related to its application of judicial estoppel. This court granted leave to appeal from the trial court's order.

ANALYSIS

Our analysis begins with an understanding of the procedural posture of this case as it relates to the certified question. Supreme Court Rule 308 provides in pertinent part as follows:

"Rule 308. Interlocutory Appeals by Permission

(a) Requests. When the trial court, in making an interlocutory order not otherwise appealable, finds that the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state in writing, identifying the question of law involved. Such a statement may be made at the time of the entry of the order or thereafter on the court's own motion or on motion of any party. The Appellate Court may thereupon in its discretion allow an appeal from the order." 155 Ill. 2d R. 308(a).

The scope of review in an interlocutory appeal under Rule 308 is ordinarily limited to the question

certified by the trial court and is reviewed *de novo.* 155 Ill. 2d R. 308; <u>Bauer v. Giannis</u>, 359 Ill. App. 3d 897, 902, 834 N.E.2d 952, 957 (2005). With these principles in mind, we consider the certified question before us.

Here, essentially we are asked to decide whether it was an abuse of discretion for the trial court to apply judicial estoppel to bar Blockbuster from challenging the propriety of certifying a national litigation class due to its previous position in a similar class action in which it agreed to class certification for settlement purposes. In order to answer that question, it is necessary to have an understanding of the statutory framework of class certification and the trial court's obligations thereunder.

Class certification is governed by section 2-801 of the Code (735 ILCS 5/2-801 (West 2004)), which is patterned after Rule 23 of the Federal Rules of Civil Procedure. <u>Avery</u>, 216 Ill. 2d at 125, 835 N.E.2d at 819. Section 2-801 provides that an action may proceed as a class action only if the circuit court finds: (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of fact or law common to the class, and those common questions predominate over any questions affecting only individual members; (3) the representative parties will fairly and adequately protect the interest of the class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy. 735 ILCS 5/2-801 (West 2004).

It is evident from the statute that a party's mere acquiescence with respect to these factors is never sufficient to support class certification. 735 ILCS 5/2-801 (West 2004). Regardless of whether a motion for certification is unopposed, the trial court has an independent obligation to

ensure that a class action is indeed appropriate and to protect absent class members even where there is no opposition to the certification. 735 ILCS 5/2-801 (West 2004); see Smith v. Sprint Communications Co., 387 F.3d 612, 614 (7th Cir. 2004) (reiterating that formalities of Federal Rule 23 must be met even when all parties to the case agree to the class treatment). Moreover, the trial court has a continuing obligation to take cognizance of a change in factual circumstances and to modify class certification rulings when necessary. 735 ILCS 5/2-802 (West 2004); Zenith Laboratories, Inc. v. Carter-Wallace, Inc., 530 F.2d 508, 512 (3d Cir. 1976); Key v. Jewel Companies, Inc., 176 Ill. App. 3d 91, 530 N.E.2d 1061 (1988) (trial court properly decertified class where initial certification was based upon pleadings that were later substantially amended).

Given the obligations of the court with respect to certification, we now consider how those obligations intersect with the doctrine of judicial estoppel and whether the trial court abused its discretion in applying the doctrine to bar Blockbuster from challenging certification under the facts presented here. "The doctrine of judicial estoppel postulates that 'a party who assumes a particular position in a legal proceeding is estopped from assuming a contrary position in a subsequent legal proceeding. [Citation.] The purpose of the doctrine is 'to promote the truth and protect the integrity of the court system by preventing litigants from deliberately shifting positions to suit the exigencies of the moment.' [Citation.]" Barack Ferrazzano Kirschbaum Perlman & Nagelberg v. Loffredi, 342 Ill. App. 3d 453, 460, 795 N.E.2d 779, 784 (2003).

The five elements necessary for the application of judicial estoppel have generally included the following: " 'the party to be estopped must have (1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4)

11

1-06-2863

intended for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it.' " <u>Barack Ferrazzano Kirschbaum Perlman & Nagelberg</u>, 342 Ill. App. 3d at 460, 795 N.E.2d at 784-85, quoting <u>People v. Caballero</u>, 206 Ill. 2d 65, 80, 794 N.E.2d 251, 262 (2002).

Thus, we first consider whether Blockbuster indeed took two inconsistent positions during the <u>Scott</u> settlement and the current <u>Cohen</u> litigation. The <u>Scott</u> class and the current <u>Cohen</u> classes are, without a doubt, distinct classes by virtue of the settlement and plaintiffs' new allegations in the second amended complaint. As alleged in that complaint, any penalty claims made after <u>Scott</u> "do not arise out of the same nucleus of operative facts." Despite the trial court's statement that the <u>Scott</u> and <u>Cohen</u> classes are virtually identical in its decision to apply judicial estoppel on May 23, 2006, the court only remarked that at the time of the <u>Scott</u> settlement, the <u>Cohen</u> and <u>Scott</u> classes were virtually identical.

However, the current <u>Cohen</u> class claims specifically cover new allegations that were not and could not have been covered by the <u>Scott</u> settlement class. As alleged in plaintiffs' complaint, these claims are specifically carved out of the <u>Scott</u> settlement to avoid *res judicata* and are premised on a breach of an oral contract rather than the membership agreement at issue in <u>Scott</u> (as explained by plaintiffs' counsel in the <u>Scott</u> settlement hearings, "[t]he terms and conditions of Blockbuster memberships [were] found only in the membership applications and nowhere else."). Thus, as Blockbuster maintains, there may be new issues regarding whether there are common questions of law or fact that predominate over questions affecting only individual class members, an essential prerequisite to certification. 735 ILCS 5/2-801(2) (West 2004).

12

Furthermore, although the class representatives in Cohen opted out of the Scott class and may have individual claims that remain the same, they can no longer bring a class action on behalf of that same class. The only class that they can currently represent are those class members that incurred penalties after April 1, 2001, which are, as expressed in the second amended complaint, new claims based on new theories. Where the rights of the class are determined by the class representatives (Avery, 216 Ill. 2d at 128, 835 N.E.2d at 821), this is a significant change in circumstances which might impact certification. Additionally, the absent class members now differ entirely from the Scott class. Notably, the Scott class consisted of over 38.5 million members, many of whose claims are now subsumed by the Scott settlement. Thus, Blockbuster's position in Scott, albeit supportive of class certification for settlement purposes, cannot be said to be completely inconsistent with its current position in the Cohen litigation where the classes are not virtually identical.

In support for its finding that Blockbuster's positions were inconsistent, the trial court relied, in part, on the Seventh Circuit's decision in Carnegie v. Household International, Inc., 376 F.3d 656, 659-661 (7th Cir. 2004). Initially, we recognize that federal decisions regarding class certification are persuasive authority in Illinois because our certification statute is patterned after the federal rules of civil procedure. Smith v. Illinois Central R.R. Co., 223 Ill. 2d 441, 448, 860 N.E.2d 332, 336 (2006). However, here we are not called upon to review the propriety of the grant or denial of class certification but, rather, to determine whether judicial estoppel bars a party from asserting arguments regarding class certification based upon its previous position in a settlement agreement. Thus, Carnegie is not binding on this court. Moreover, we find it

13

1-06-2863

distinguishable.

There, plaintiffs and defendants entered into a global settlement of class claims. Defendants asserted that the class was suitable for certification and in return, the settlement was to bind all absent class members who failed to opt out and to prevent any further suits of that nature. Carnegie, 376 F.3d at 659. The Seventh Circuit subsequently reversed the approval of the settlement, holding that it demanded closer scrutiny and expressing concern that the settlement might have been the product of collusion. Carnegie, 376 F.3d at 659. On remand, the district court declined to approve the settlement, having deemed it unfair. Carnegie, 376 F.3d at 659.

Although the named plaintiff and class counsel were replaced, the court otherwise "certified the same class that had been contemplated by the rejected settlement" over the defendants' objections that the class should not be certified for litigation purposes. Carnegie, 376 F.3d at 659. The Seventh Circuit affirmed, holding that the doctrine of judicial estoppel precluded the defendants from changing position regarding the adequacies of the class, "at least as a settlement class," when they had urged the court to accept the class as appropriate. Carnegie, 376 F.3d at 660. Although the court acknowledged distinctions between settlement and litigation classes, the court found that there was no problem converting the settlement class into a litigation class "especially in a case in which the defendants were enthusiastic proponents of class treatment until their opportunistic change of heart." Carnegie, 376 F.3d at 664. In its ruling, the court focused on the defendants' behavior and the antifraud policy that animates the doctrine. Carnegie, 376 F.3d at 660.

14

1-06-2863

Here, in contrast, Blockbuster's shift in position resulted from a change in the class, the identification of new claims, and a change in the theory of litigation, and not from an untoward or fraudulent motive, or a deliberate shift in position " 'to suit the exigencies of the moment.' " Barack Ferrazzano Kirschbaum Perlman & Nagelberg, 342 Ill. App. 3d at 460, 795 N.E.2d at 784, quoting Bidani v. Lewis, 285 Ill. App. 3d 545, 550, 675 N.E.2d 647, 650 (1996). As a result, Blockbuster cannot be estopped from arguing that decertification of the class is now warranted. We make no judgment about the efficacy of Blockbuster's assertions but, merely, hold that they have a right to assert them. Whether decertification is ultimately warranted is a matter for the trial court to consider in its discretion. Smith, 223 Ill. 2d at 447, 860 N.E.2d at 336.

Further, as Carnegie recognized, the United States Supreme Court has indicated that a class might be suitable for settlement purposes but not for litigation because the settlement might "eliminate all the thorny issues that the court would have to resolve if the parties fought out the case." Carnegie, 376 F.3d at 660, citing Amchem Products, Inc. v. Windsor, 521 U.S. 591, 620, 138 L. Ed. 2d 689, 710-11, 117 S. Ct. 2231, 2248 (1997). Thus, support for a settlement class is not necessarily inconsistent with the position that class litigation might be inappropriate. To apply estoppel principles here merely because a class was certified for settlement purposes would disregard this distinction and would preclude Blockbuster from asserting any argument regarding a change in circumstances due to an amended complaint.

In finding that judicial estoppel is not applicable here, we also consider Blockbuster's contention that it specifically limited its settlement agreement in Scott to certification for

15

settlement purposes only and reserved its right to contest class certification with respect to future litigation. A reservations of rights should be a factor to consider in determining whether a party has taken an inconsistent position in an earlier proceeding. The language of the reservation indicates that if the settlement agreement was not approved, Blockbuster would be free to reargue class certification for litigation purposes. Although it does not specifically address the scenario here where the settlement was approved, it is some evidence that Blockbuster sought to limit its agreement to certification for settlement purposes to that case only and did not intend it to apply to other litigation, thereby indicating that it did not take an inconsistent position here.

We conclude that judicial estoppel is not applicable in this context because the trial court has an independent and continuing responsibility to ensure that a class action is indeed appropriate and to protect absent class members when there is a change in circumstances even where there is no opposition to it. 735 ILCS 5/2-801, 2-802 (West 2004). Although a party's position during settlement can be relevant to whether certification is proper for litigation purposes, it cannot act as *de facto* certification for litigation purposes. To apply judicial estoppel would, in essence, abdicate the court's continuing duty to assure that the class satisfies the criteria for certification under section 2-801, especially here, where there have been substantive amendments to the complaint.

Accordingly, for all of the foregoing reasons, we answer the certified question in the affirmative, holding that the circuit court abused its discretion when it imposed the equitable doctrine of judicial estoppel to bar Blockbuster from challenging certification of a national litigation class in Illinois based on its previous position in a prior settlement of a different class in a

16

related case. We remand for reconsideration of Blockbuster's motion to decertify the national class on the merits. We instruct the trial court to reexamine the certification requirements of section 2-801 of the Code (735 ILCS 5/2-801 (West 2004)) in light of the allegations in the second amended consolidated complaint.

Certified question answered in the affirmative. Remanded with directions.

QUINN, P.J. and GREIMAN, J., concur.

**MARC COHEN, UWE STUECKRAD,**
**MARC PERPER and DENITA**
**SANDERS, Individually and on**
**Behalf of All Others Similarly Situated,**

  **Plaintiffs-Appellees,**

  **v.**

**BLOCKBUSTER ENTERTAINMENT,**
**INC., Individually and on Behalf of all**
**Entities Doing Business as Blockbuster**
**Or Blockbuster Video,**

  **Defendant-Appellant.**

_____

**No. 1-06-2863**

**Appellate Court of Illinois**
**First District, Third Division**

**Filed: September 26, 2007**

_____

**JUSTICE THEIS delivered the opinion of the court.**

**Quinn, P.J. and Greiman, J., concur.**

_____

**Appeal from the Circuit Court of Cook County**
**Honorable Paul Biebel, Judge Presiding**

_____

For DEFENDANT -          James A. Cherney
APPELLANT                Cindy L. Sobel
                         Latham & Watkins LLP
                         5800 Sears Tower
                         Chicago, IL 60606

Gino L. DiVito
Tabet DiVito & Rothstein LLC
209 South LaSalle Street, 7th Floor
Chicago, IL 60604

Peter C. John
Williams Montgomery & John
20 North Wacker Drive, Suite 2100
Chicago, IL 60606

For PLAINTIFFS -          William J. Harte
APPELLEES                 Joan M. Mannix
William J. Harte, Ltd.
111 West Washington Street, Suite 1100
Chicago, IL 60602

Edward T. Joyce
Arthur W. Aufmann
Edward T. Joyce & Associates, P.C.
11 South LaSalle Street, Suite 1600
Chicago, IL 60603

Aron D. Robinson
Law Office of Aron D. Robinson
19 South LaSalle Street, Suite 1300
Chicago, IL 60603

Robert F. Lisco
Law Offices of Robert F. Lisco, P.C.
20 North Clark Street, Suite 2450
Chicago, IL 60602

Lance A. Raphael
The Consumer Advocacy Center, P.C.
180 West Washington Street, Suite 700
Chicago, IL 60602

Christopher V. Langone
The Langone Law Firm, LLC
993 Dryden Road #6
Ithaca, NY 14850

Paul M. Weiss
Freed & Weiss, LLC
111 West Washington Street, Suite 1331
Chicago, IL 60602